UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: BP p.l.c. | § | MDL No. 10-md-2185 |
| SECURITIES LITIGATION | § | |
| | § | |
| | § | |
| | § | |
| OHIO PUBLIC EMPLOYEES | § | Civ. Act. No. 4:12-cv-1837 |
| RETIREMENT SYSTEM et al. | § | |
| | § | |
| v. | § | HON. KEITH P. ELLISON |
| | § | |
| BP P.L.C. et al. | § | |
| | § | |

## MEMORANDUM AND ORDER

In this case, several Ohio state pension funds ("Plaintiffs") allege that Defendants BP p.l.c.; BP America, Inc.; BP Exploration & Production, Inc.; Anthony Hayward; Douglas Suttles; and Andrew Inglis ("Defendants") violated Ohio's securities law and committed common law fraud when they caused misleading representations and fraudulent omissions to be disseminated within the state of Ohio. Plaintiffs contend that these statements artificially inflated the price of ordinary shares in Defendant BP p.l.c. (the "Ordinary Shares") and caused the state funds to lose considerable value following the April 20, 2010 Deepwater Horizon disaster in the Gulf of Mexico. Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 36).[1] Having considered the parties' pleadings, arguments, and the applicable law, the Court finds that Defendants' motion must be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

This case shares a common nucleus of facts with *In re BP Securities Litigation*, 10-md-

---

[1] All docket references are to Civil Action No. 12-cv-1837.

2185, a putative class action under U.S. federal securities law (the "Class Action"), and with several individual actions asserting common law and statutory anti-fraud claims under the laws of various U.S. states (the "Individual Actions"). Detailed factual allegations regarding the Deepwater Horizon disaster and Defendants' alleged fraudulent scheme will not be recounted here, but may be found in the Court's orders on three motions to dismiss filed in the Class Action. *See In re BP p.l.c. Securities Litig.* ("*BP I*"), 843 F. Supp. 2d 712 (S.D. Tex. 2012); *In re BP p.l.c. Securities Litig.* ("*BP II*"), 852 F. Supp. 2d 767 (S.D. Tex. 2012); *In re BP p.l.c. Securities Litig.* ("*BP III*"), 922 F. Supp. 2d 600 (S.D. Tex. 2013).

### A.     The Defendants

Defendant BP p.l.c. is the titular head of a multi-national group of related business entities actively involved in the exploration, production, and sale of hydrocarbons. BP p.l.c. is a U.K. corporation headquartered in London, England, and its Ordinary Shares trade on the London Stock Exchange ("LSE").[2] (Doc. No. 1-1 ("Compl."), at ¶¶ 6, 28.) Defendants BP America, Inc. ("BP America") and BP Exploration and Production Inc. ("BP E&P") are related business entities in the group helmed by BP p.l.c. Both are Delaware corporations, with headquarters in Houston, Texas. (*Id.* ¶¶ 29, 30.)

Plaintiffs have also named three former directors and officers of BP plc as defendants: Anthony "Tony" Hayward, Douglas Suttles, and Andrew "Andy" Inglis. Hayward served as BP's Chief Executive Officer from May 2007 until October 2010. (Compl. ¶ 33.) Suttles was BP's Chief Operating Officer for Exploration and Production from January 2009 until at least

---

[2] Investors interested in the BP Group may also purchase its American Depository Shares ("ADSs"), which trade on the New York Stock Exchange ("NYSE"). Plaintiffs in the Class Action—including Ohio Public Employees Retirement System, a plaintiff in this case—seek recovery for the loss in value of BP ADSs. In this case, however, Plaintiffs seek recovery only for the loss in value of BP's Ordinary Shares. (Doc. No. 1-1 ("Compl."), at 1 n.2.)

January 2011. (*Id.* ¶ 34.) Inglis was CEO of BP's Exploration & Production ("E&P") business unit, and an executive director of the Company, from February 2007 until October 2010. (*Id.* ¶ 35.)

**B.     Brief Summary of the Alleged Fraud**

Broadly, Plaintiffs claim that Defendants made materially false statements that induced the state funds to purchase BP Ordinary Shares at artificially high prices. (Compl. ¶¶ 18, 454.) These alleged misrepresentations include: (1) that BP had improved process safety by implementing the Baker Panel recommendations; (2) that BP's Operating Management System ("OMS") extended to all BP operations; (3) that BP had transitioned to OMS in the Gulf of Mexico in 2008; (4) that BP could respond to and contain a significant oil spill in the Gulf; and (5) that the spill-rate following the Deepwater Horizon explosion was estimated at between 1,000 and 5,000 barrels per day. (*Id.* ¶¶ 9-18, 94, 434-37, 441.) Plaintiffs allege that the price of BP's Ordinary Shares was artificially inflated as a result of BP's misrepresentations, and that they suffered more than $100 million in losses after the Deepwater Horizon disaster. (*Id.* ¶¶ 454, 469.) Plaintiffs assert common law fraudulent misrepresentation and fraudulent concealment claims (*id.* ¶¶ 484-95) and claims for violation of Ohio's Securities Act (*id.* ¶¶ 496-504).

**II.     SUMMARY OF DEFENDANTS' MOTION TO DISMISS**

Defendants raise several grounds for dismissal of Plaintiffs' claims. First, Defendants challenge personal jurisdiction in Ohio, where this action was originally filed. All Defendants contend that they are not subject to either general personal jurisdiction or specific personal jurisdiction in Ohio. (Doc. No. 38 ("Cons. MTD"), at 64-67.)

Second, Defendants argue that English law applies to Plaintiffs' claims. (Cons. MTD at 9-18.) They raise a number of alleged deficiencies in Plaintiffs' claims under English common

law and the Financial Services and Markets Act 2000 ("FSMA"). (*Id.* at 18-43.) Alternatively, Defendants seek dismissal under the doctrine of forum non conveniens. (*Id.* at 43-47.) The Court resolves Defendants' arguments regarding English law and forum non conveniens pursuant to the reasoning articulated in the Memorandum and Order (the "*Alameda County* Opinion") issued this day in a related case, *Alameda County Employees' Retirement Association et al. v. BP p.l.c. et al.* [12-cv-1256].

Finally, Defendants argue that, if the Court decides that the law of Ohio applies to Plaintiffs' claims, such claims are barred by the dormant commerce clause. (Cons. MTD at 47-56.) The Court does not reach the merits of this argument due to the posture of the case, as explained in more detail in Section IV(D).

## III.   PERSONAL JURISDICTION

Because this case was transferred for pre-trial coordination by the Judicial Panel on Multi-District Litigation, the Court must assess whether Defendants are subject to personal jurisdiction in Ohio, where the case was originally filed. *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 511 F. Supp. 2d 742, 789 (S.D. Tex. 2005). Ohio's long-arm statute does not extend to the limits of due process. *See Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994). As a result, the Court's analysis will consist of two steps: (1) whether Ohio's long-arm statute confers jurisdiction over Defendants, and (2) if so, whether the exercise of jurisdiction under the long-arm would deprive Defendants of due process under the U.S. Constitution.[3] *Conn v. Zakharov*,

---

[3] Parties dispute whether Ohio recognizes general personal jurisdiction outside the confines of the Ohio long-arm statute. (Cons. MTD at 65; Opp.. at 46-48.) The Court finds it unnecessary to resolve the issue. Because Plaintiffs' injuries unquestionably occurred "in Ohio," any Defendant with the "continuous and systematic" contacts necessary to satisfy general personal jurisdiction would easily meet section (A)(4) of the Ohio long-arm. *See* O.R.C. § 2307.382(A)(4) (providing that an Ohio court may exercise personal jurisdiction over a party as to a cause of action arising

667 F.3d 705, 712 (6th Cir. 2012). Because the Court did not hold an evidentiary hearing on

Defendants' Motion, Plaintiffs need make only a *prima facie* showing of jurisdiction.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

A.      **Ohio Long-Arm Statute**

Plaintiffs claim Defendants are subject to jurisdiction in Ohio under two provisions of the

Ohio long-arm statute. (Doc. No. 42 ("Opp.."), at 44.) These provisions are:

(A)     A court may exercise personal jurisdiction over a person who acts directly
        or by an agent, as to a cause of action arising from the person's:

        . . .

        (3)     Causing tortious injury by an act or omission in this state; [or]

        (4)     Causing tortious injury in this state by an act or omission outside
                this state if he regularly does or solicits business, or engages in any
                other persistent course of conduct, or derives substantial revenue
                from goods used or consumed or services rendered in this state[.]

O.R.C. § 2307.382(A)(3)-(4).

1.      **Section A(3) of the Ohio long-arm does not confer personal
        jurisdiction over Defendants.**

Viewing the allegations in the Complaint in the light most favorable to Plaintiffs,

Defendants are alleged to have engaged in a systematic fraudulent scheme designed to conceal

the true state of BP's safety programs and safety improvement efforts; BP's abilities to contain

an oil spill in deepwater; and the magnitude of the oil spill following the Deepwater Horizon

explosion. Although Plaintiffs claim that the scheme was specifically directed to the state of

Ohio, the Court does not credit this conclusory allegation which is unsupported by any specific

---

from the party's "causing tortious injury in [Ohio] by an act or omission outside [Ohio] if he
regularly does or solicits business, or engages in any other persistent course of conduct, or
derives substantial revenue from goods used or consumed or services rendered in [Ohio]").

factual allegations relevant to Ohio or to Plaintiffs. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Even viewing the allegations in Plaintiffs' favor, it is clear that the alleged fraudulent scheme was global in nature, but undifferentiated as to target or reach.

For purposes of the Ohio long-arm, this undifferentiated but global fraudulent scheme is not sufficient to satisfy the requirements of Section (A)(3)—that the defendant "caus[e] tortious injury by an act or omission *in this state*." O.R.C. § 2307.382(A)(3) (emphasis added). As numerous courts have recognized, Section (A)(3) contemplates that the defendant's "'causing act or omission'" physically take place in the state of Ohio. *EnQuip Techs. Group, Inc. v. Tycon Technoglass, S.R.L.*, 2010 WL 53151, at \*9 (Ohio Ct. App. Jan. 8, 2010) (quoting *Gerber v. Riordan*, 2009 WL 1505572, at \*3 (N.D. Ohio May 28, 2009)); *see also Hildebrand v. Steck Mfg. Company, Inc.*, 279 F.3d 1351, 1355 (Fed. Cir. 2002) ("To satisfy (A)(3), both the tortious act and the injury must occur in Ohio. The presence of the alleged tortfeasor is required. . . . . By never being present in Ohio, therefore, [defendant] could not have committed an act within Ohio.") (citations omitted); *Ginter v. Strickland*, 89 F.R.D. 70, 73 (S.D. Ohio 1981) ("The scope of subsection (3) is limited to a tortious occurrence in which the causing act or omission as well as the resulting injury occur in Ohio. Subsection (3) contemplates that the act or omission causing tortious injury must be committed in Ohio.") (quoting *Busch v. Service Plastics, Inc.*, 261 F. Supp. 136, 140 (N.D. Ohio 1966)); *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.*, 2009 WL 2591757, at \*4 (S.D. Ohio Aug. 19, 2009) (same).

Although the Court finds this authority very persuasive, at least one court has found Section (A)(3) met by fraudulent communications originating outside Ohio, if they were received in Ohio. *See FRC Int'l, Inc. v. Taifun Feuerloschgeratebau und Vertriebs GmbH*, 2002 WL

31086104, at *4 (N.D. Ohio Sept. 18, 2002); *see also Javitch v. Neuma, Inc.*, 2006 WL 240580, at *3 (N.D. Ohio Jan. 31, 2006) ("[T]he claims of misrepresentation and omissions are grounded in the documents which were sent to Ohio and upon which Liberte ultimately determined to go forward with the purchase. Viewing the allegations in the light most favorable to the Plaintiff, the omissions contained in those transmissions are sufficient to come within the purview of § 2307.382(A)(3).").[4] In this regard, fraud may be similar to the tort of defamation, which "occurs" wherever the offending statement is published or circulated. *See Kauffman Racing Equip., LLC v. Roberts*, 930 N.E.2d 784, 791 (Ohio 2010). And if the offending statement is published online—"ostensibly for the world to see"—then it has been published in Ohio. *Id.* The Court does not find the comparison to defamation persuasive and does not believe that Defendants' alleged conduct brings them within the confines of Section (A)(3) of the Ohio long-arm. Nonetheless, for sake of thoroughness, the Court will proceed to evaluate whether the exercise of jurisdiction over Defendants would satisfy due process.

---

[4] In another case, the Southern District of Ohio noted that companion courts in the Sixth Circuit "have held that alleged fraudulent communications [originating outside Ohio] can satisfy the 'causes tortious injury by an act or omission in the state' portion of the Ohio long-arm statute." *Shaker Constr. Group, LLC v. Schilling*, 2008 WL 4346777, at *4 (S.D. Ohio Sept. 18, 2008). Although this passage quoted the language from Section (A)(3), the court appears to have been addressing Section (A)(6) of the Ohio long-arm statute, as made clear in context and by the cases cited. *See, e.g., id.* (concluding that jurisdiction exists over defendants "under Ohio Rev. Code § 2307.382(A)(6)").

The Court further notes that Section (A)(6) seems directly targeted to the situation at issue here. Section (A)(6) authorizes jurisdiction when the defendant "[c]aus[ed] tortious injury in this state to any person by an act outside this state." O.R.C. § 2307.382(A)(6). It further requires that the defendant "might reasonably have expected that some person would be injured thereby in this state"—a requirement not met by Defendants' globally-disseminated statements. The existence of Section (A)(6) provides another basis for the Court's understanding that the undifferentiated, untargeted conduct alleged here does not satisfy Section (A)(3).

##### 2.    Section (A)(4) of the Ohio long-arm confers personal jurisdiction over BP p.l.c. and BP America.

In addition to their argument under Section (A)(3), Plaintiffs claim that Section (A)(4) authorizes the exercise of jurisdiction over BP p.l.c. and BP America. These Defendants dispute that they engage in activities which satisfy the requirements of Section A(4)—specifically, that they regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Ohio. (Doc. No. 45 ("Cons. Reply"), at 41-42.)

###### a.    BP p.l.c.

The jurisdictional allegations relevant to BP p.l.c. are that it:

- Sells, supplies, and markets large volumes of oil and gas in Ohio;

- Owns a 50% interest in an oil refinery located in Oregon, Ohio with the capacity to process 160,000 barrels of oil per day;

- Leases 84,000 acres of property for oil/gas production in Trumbull County, Ohio;

- Employs over 600 employees in the state;

- Disseminates advertisements and communications into Ohio;

- Files documents with the SEC that were made available to investors in Ohio; and

- Sells gas through over 600 BP-branded gas stations throughout Ohio.

(Compl. ¶ 28.) These allegations meet the relatively flexible standards of Section (A)(4). *See Smith v. GAF Corp.*, 583 F. Supp. 1101, 1103 (S.D. Ohio 1984) (finding that twenty-five years of repeated, significant sales to a company with a manufacturing plant and offices in Ohio constitutes "regular solicitation of business" in Ohio); *see also Irizarry v. East Longitude Trading Co., Ltd.*, 296 F. Supp. 2d. 862, 866 (N.D. Ohio 2003) ("'[S]ubstantial revenue' is a flexible term, and this court has considerable latitude in determining what constitutes substantial

revenue."); *Busch v. Service Plastics, Inc.*, 261 F. Supp. 136, 141 (N.D. Ohio 1966) ("[P]roof of a persistent course of conduct might be satisfied by a showing that [Defendant] continuously and not sporadically relied on and benefited from one or more independent sales or service representatives operating in Ohio.").

Defendants' strongest argument against the application of Section (A)(4) is that the cited business activity in Ohio was actually conducted by business entities related to BP p.l.c.—direct and indirect subsidiaries and joint ventures—rather than by BP p.l.c. itself. (Cons. Reply at 41.) But this argument was raised belatedly in Defendants' reply memorandum rather than its opening brief.[5] Typically, when faced with a properly supported motion to dismiss for lack of personal jurisdiction, a plaintiff may not rely solely upon the allegations in the complaint, but must submit evidentiary support for those allegations. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). However, given the confusion regarding Defendants' arguments, the Court feels compelled to permit Plaintiffs to rely upon the Complaint allegations to establish their *prima facie* case. The Court notes that Defendants may raise their argument again. With a more extensive record—including jurisdictional discovery and an evidentiary hearing, if appropriate—the Court may make the evidentiary findings that the argument requires.

### b.    BP America

The jurisdictional allegations relevant to BP America are that it:

- Is licensed with the Ohio Secretary of State to transact business in Ohio; and

- Maintains a registered agent in Ohio.

---

[5] Defendants' opening brief omitted any argument that BP p.l.c. does not conduct any business in Ohio, as required for Section (A)(4) of the long-arm statute. Instead, Defendant's opening brief argued that Ohio does not recognize general jurisdiction. (Cons. MTD at 65.)

(Compl. ¶ 29.) Although these allegations are less descriptive than those provided for BP p.l.c., they suffice to establish a *prima facie* case that BP America "regularly does or solicits business" in Ohio. *See Price v. Wheeling Dollar Sav. & Trust Co.*, 460 N.E.2d 264, 268 (Ohio Ct. App. 1983) (finding allegation that defendant "is licensed to do business in Ohio" "answers the question" of whether defendant "regularly does or solicits business in Ohio" because "[t]here would be no reason for [defendant] to have [a license] if it did not do business in Ohio"); *see also Fraley Trucking v. Oeding*, 981 N.E.2d 911, 917 (Ohio. Ct. App. 2012) (allegation that defendant "has an insurance license from the Ohio Department of Insurance authorizing it to transact business in this state" is support for "the fact that it does conduct business in Ohio").

### B.    Constitutional Due Process

The second prong of the Court's inquiry is whether the exercise of personal jurisdiction authorized by the Ohio long-arm statute complies with the requirements of constitutional due process. *Kauffman*, 930 N.E.2d at 792. At the core of constitutional due process is the idea that a defendant must have "purposefully availed" himself of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws and subjecting himself to the power of its courts.[6] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The focus of the inquiry is properly upon the actions and choices of the defendant, and his reasonable expectations regarding the possibility that he could be made to answer for those actions and choices in the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that the "'purposeful availment' requirement ensures that a defendant will not be haled into a

---

[6] Although the common articulation is that the defendant, through his actions, has invoked the "benefits and protections" of the forum state's laws, it is clear that this requirement can also be met by actions taken to "obstruct" those laws. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011).

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts" . . . or the 'unilateral activity of another party or a third person'") (citations omitted).

"Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Kauffman*, 930 N.E.2d at 792. The Court will evaluate the sufficiency of Plaintiffs' jurisdictional allegations under both types of jurisdiction.

### 1. Under constitutional principles of general jurisdiction, the Court may exercise personal jurisdiction over BP p.l.c. and BP America.

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). The Sixth Circuit has emphasized that, to establish general jurisdiction, the defendant's contacts with the forum must be so "pervasive" that they "approximate physical presence within the state." *See Conn*, 667 F.3d at 720. Plaintiffs do not claim that BP E&P or the Individual Defendants have continuous and systematic contacts with Ohio. (Opp. at 43-51.) Therefore, the Court may confine its analysis to BP p.l.c. and BP America.

Plaintiffs' allegations support that BP p.l.c. is physically present in Ohio, particularly through its involvement in the Oregon, Ohio oil refinery; its lease of substantial property in Trumbell County, Ohio; and its employment of over 600 Ohioans. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-49 (1952) (permitting exercise of personal jurisdiction over Phillipine corporation whose president worked out of an office in Ohio from which he drew

and distributed payroll checks, performed corporation's filing and correspondence, and held regular directors' meetings). Defendants dispute that these contacts belong to BP p.l.c., but—as noted above—the Court must credit Plaintiffs' well-pled factual allegations and resolve factual disputes in their favor. General jurisdiction may be exercised over BP p.l.c. in Ohio without violating its due process rights.

Plaintiffs' allegations regarding BP America are much thinner. Plaintiffs rely principally on the fact that BP America has been registered with the Ohio Secretary of State to transact business in Ohio since 1987. But this fact alone provides little insight into BP America's activities in the forum.[7] In effect, Plaintiffs seek a *per se* rule that registration to do business in Ohio is sufficient minimum contacts to survive constitutional scrutiny.

There is some support in Ohio for Plaintiffs' position. *See Fraley Trucking*, 981 N.E.2d at 918 ("[H]aving a license to do business in Ohio is, *per se*, sufficient evidence to conclude that an out-of-state corporation had necessary minimum contacts with Ohio [to satisfy due process]."); *Price*, 460 N.E.2d at 269 (same). There are also authorities denouncing such a categorical rule. *See Speck v. Mut. Service Life Ins. Co.*, 585 N.E.2d 509, 512 (Ohio Ct. App. 1990) (disagreeing with *Price* court's conclusion that license to do business in Ohio is *per se* evidence of minimum contacts); *see also Pittock v. Otis Elevator Co.*, 8 F.3d 325, 328-29 (6th Cir. 1993) (rejecting argument that foreign corporation's compliance with Ohio regulation requiring appointment of agent for service of process constitutes consent to jurisdiction in Ohio). Evaluating these cases

---

[7] Plaintiffs also cite four lawsuits brought by BP America in Ohio in the late 1980s and early 2000s. (Opp. at 49 n.24.) Although these are some evidence that BP America can be "found" in Ohio, given their remoteness in time and the fact that they are unaccompanied by any specific allegations regarding BP America's more recent business activities in Ohio, the Court does not find the lawsuits particularly instructive. *See Nat'l Strategies, LLC v. Naphcare, Inc.*, 2010 WL 5392947, at *4-5 (N.D. Ohio Dec. 22, 2010) (finding "substantial continuous and systematic contacts" with Ohio based, <u>in part</u>, on defendant's "filing and defending lawsuits in Ohio").

against the backdrop of extensive Supreme Court jurisprudence, the Court cannot agree that BP America is subject to general jurisdiction in Ohio simply by virtue of its registration to do business there. General jurisdiction requires continuous, systematic, and pervasive contacts with a forum. *Conn*, 667 F.3d at 713, 718-20. Mere registration to do business—without more—is not "continuous," "systematic," or "pervasive."

It may be true that a state can require, as a condition of registering to conduct business within its borders, that a corporation submit to the general jurisdiction of its courts.[8] However, Plaintiffs have not shown the Court—and the Court has not been able to find on its own—that either the Ohio legislature or the Ohio Supreme Court has decided that consent to general jurisdiction is the price that Ohio has placed on the privilege of doing business there.[9] The Court will not create or impose this regime without more persuasive authority.

---

[8] *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (acknowledging that the Supreme Court "has upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures"); *see also Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29-30 (1917) ("[W]hat acts of the defendant shall be deemed a submission to [a court's] power is a matter upon which States may differ.").

[9] Plaintiffs imply that this is the law in Ohio, citing the following dicta from *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*:

> To be present in Ohio, a foreign corporation must appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts.

486 U.S. 888, 889 (1988). The Sixth Circuit has considered and rejected the reliance that Plaintiffs place on this language from *Bendix*. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("As we read *Bendix*, a case from our Circuit, the Supreme Court was saying that the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction.").

**2.      The Court's exercise of jurisdiction under the Ohio long-arm statute is not justified by principles of specific jurisdiction.**

Specific jurisdiction "is permissible only if [Defendant's] contacts with Ohio satisfy the three-part test that [the Sixth Circuit] established in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)." *Bird*, 289 F.3d at 874. The three-part test requires: (1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence therein; (2) the cause of action arises from the defendant's activities in the forum; and (3) the acts of the defendant, or the consequences caused by him, are sufficiently connected to the forum to make the exercise of jurisdiction "reasonable." *Id.*

As to BP E&P and the Individual Defendants, Plaintiffs' allegations fail under the first part of the *Bird* test. Even accepting, as pled, that these Defendants engaged in a global fraudulent scheme to inflate BP's stock price, by doing so they did not "purposefully avail" themselves of the benefits of acting in Ohio. The connection between their alleged misstatements, and Plaintiffs' alleged harm, exists by virtue of Plaintiffs' decision to access a number of public sources of information about BP in order to decide whether to invest in BP stock. Such "'unilateral activity'" by Plaintiffs and their investment advisors is insufficient to satisfy the "purposeful availment" requirement of specific jurisdiction. *Burger King*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.").

As to BP p.l.c. and BP America, Plaintiffs' allegations fail under the second part of the *Bird* test. As alleged, these Defendants conducted business in Ohio and/or derived substantial

revenue from Ohio, which constitutes "purposeful availment" of the benefits of acting in Ohio. *See Smith*, 583 F. Supp. at 1103. But these separate activities are not the source of Plaintiffs' claims and cannot justify the exercise of specific jurisdiction.

## IV.   EFFECT OF COURT'S RULING IN ALAMEDA COUNTY

The Court resolves Defendants' Motion to Dismiss according to the reasoning announced in the *Alameda County* Opinion. However, because Plaintiffs have raised unique arguments to the choice-of-law issue which are not reflected in that opinion, the Court will address them here.

### A.   Judicial Estoppel

Plaintiffs argue that Defendants are estopped from arguing that Ohio law does not apply to Plaintiffs' claims. (Opp. at 11-12.) Plaintiffs base their argument on the following representation to the Court in connection with Plaintiffs' motion to remand:

> Indeed, we readily acknowledge that if this case were to proceed before Your Honor, Your Honor would be applying . . . Ohio law.

(Doc. No. 27, at 47.) The Court does not share Plaintiffs' interpretation of this statement. Considering the statement in the context of the motion to remand, and the Court's inquiries of the parties, it is clear that Defendants were representing that: (1) the choice-of-law provision found in the Outer Continental Shelf Lands Act ("OCSLA") would not govern the law that applies to Plaintiffs' claims, and (2) Plaintiffs' claims would not be preempted by the Securities Litigation Uniform Standards Act.[10] (Doc. No. 18, at 1; Doc. No. 20, at 1-5; Doc. No. 27, at 47-48.) Neither representation is inconsistent with Defendants' Motion to Dismiss.

### B.   Prematurity

Plaintiffs argue that choice of law at the pleading stage is "premature," because discovery

---

[10] OCSLA is the federal statute conferring subject matter jurisdiction over Plaintiffs' claims. (Doc. No. 25, at 4-8.)

and factual development is necessary to determine the state with the most significant relationship. (Opp. at 3, 9-11.) But the Court does not find that any of the unknown facts listed in Plaintiffs' opposition brief is likely to alter the choice-of-law analysis. (*Id.* at 11 ("For example, areas for discovery will include the knowledge of each Defendant regarding the dissemination of each of the misrepresentations into Ohio; Defendants' intentions regarding any reliance on those misrepresentations by purchasers of BP ordinary shares and/or their agents, including reliance by Ohio investors and the Ohio Plaintiffs; and the contacts Defendants have had with Ohio investors regarding the misrepresentations.").) The complaint in this case is the product of significant discovery in a related multi-district litigation. It extends to nearly 200 pages, and includes copious amounts of detail regarding Defendants' operations, missteps, and alleged fraud. The Court does not agree that addressing choice of law on such a meticulous and particular pleading is "premature."

### C.      Place-of-Injury Presumption

Plaintiffs argue that, in a tort action, Ohio choice of law principles presume that the law of the state where the injury occurred controls. This presumption can be rebutted if another jurisdiction has a more significant relationship to the lawsuit. They contend that, according to these Ohio choice-of-law rules, Ohio law governs their common law claims. (Opp. at 12-13.) In support, Plaintiffs cite *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984) and *Nicula v. Nicula*, No. 84049, 2009 WL 1244170, at *6 (Ohio Ct. App. May 7, 2009).

Plaintiffs' reliance on these cases is misplaced. In Ohio, "Section 148 of the Restatement (Second) of Conflicts of Law governs choice of law for claims of fraud." *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 820-21 (6th Cir. 1990). Neither *Morgan* nor *Nicula* addresses Section 148. In fact, *Morgan*, which both Plaintiffs and *Nicula* cite for the place-of-injury presumption,

16

explicitly addresses the choice of law principles governing personal injury torts, which are found in Section 146 of the Restatement, and not those governing fraud and misrepresentation torts, which are located in Section 148. Under Section 148 as it applies here, there is no place-of-injury presumption, but, rather, a series of factors courts are to take into account in determining the governing law. *See* Restatement (Second) of Conflict of Laws § 148(2).

In any event, even if the place of injury were "presumed" to have the strongest relationship, the other Section 148 factors are sufficiently weighty to displace the presumption. Most importantly, none of the alleged misrepresentations was made from Ohio; none was specifically directed to Ohio; no defendant is a resident of Ohio; and none of the U.S. operations giving rise to Plaintiffs' claims were conducted in Ohio. Indeed, the only connection to Ohio is the fact that Plaintiffs are found there and experienced financial harm there. Neither Section 148 nor Section 6 of the Restatement (Second) of Conflict of Laws suggests that Ohio has a superior interest in the outcome of these claims than does England.[11] The Court will apply English law to Plaintiffs' common law claims.

### D.    Choice of Law for Ohio's Securities Act

Finally, Plaintiffs argue that choice of law is not necessary for their Ohio's Securities Act claims. (Opp. at 23-26.) Plaintiffs cite a number of cases in which courts have concluded that multiple blue sky laws can apply to a single transaction, so long as the transaction has a "territorial nexus" to each state. *See Simms Inv. Co. v. E.F. Hutton & Co., Inc.*, 699 F. Supp. 543, 545 (M.D.N.C. 1988) ("Overlapping state securities laws do not present a classic conflict of laws

---

[11] To summarize, England's interest in the case is exemplified by the facts that: (1) several alleged misrepresentations were disseminated from England; (2) several Defendants are English citizens or are involved in the governance of an English corporation accused of massive securities fraud; and (3) Plaintiffs' acts of reliance took place, at least in part, in England, where BP's Ordinary Shares are listed on the LSE.

question."); *Lintz v. Carey Manor Ltd.*, 613 F. Supp. 543, 550 (W.D. Va. 1985) (rejecting "an unduly narrow view of the authority of [a] state to regulate securities transactions which have a nexus to the state" and noting that "the only limitation of the reach of [a blue sky law] is that the state have a real nexus to the transaction"); *In re Countrywide Fin. Corp Mortgage-Backed Securities Litig.*, 2012 WL 1322884, at *2 (C.D. Cal. April 16, 2012) ("If a transaction touches multiple states, it follows that multiple Blue Sky laws may apply simultaneously."); *United Heritage Life Ins. Co. v. First Matrix Inv. Services Corp.*, 2009 WL 3229374, at *4 (D. Id. Sept. 30, 2009) ("The developing majority view is that so long as there is a territorial nexus, more than one states' securities laws can apply to a transaction, so long as that statute does not limit its own application."); *see also Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1533-1536  (M.D. Fla. 1989) (agreeing with reasoning in *Lintz* that multiple blue sky laws may apply to a transaction without necessitating choice of law).

Before the Court can reach the merits of Plaintiffs' argument, it must first determine whether there is a territorial nexus to Ohio in this case.[12] Plaintiffs claim that such a nexus is provided simply by virtue of their residence in Ohio. (Opp. at 26.) Defendants respond that Plaintiffs' residence is not sufficient to create a territorial nexus when the transaction at issue is "impersonal" and conducted on a market exchange located in London. (Reply at 7 n.4.)

The Ohio Securities Act does not contain a model "scope of act" provision which can be used to determine the intended reach of the act. *In re Nat'l Century Fin. Enterprises, Inc., Investment Litig.* ("*Nat'l Century II*"), 755 F. Supp. 2d 857, 874 (S.D. Ohio 2010) ("The Ohio Securities Act says little about its territorial scope, particularly when compared to other state blue sky laws."). Therefore, the Court will apply "modern" notions of "the territorial scope of

---

[12] To be clear, Plaintiffs concede that a territorial nexus with Ohio is required. (Opp. at 25.)

contracts between citizens of different states," to Plaintiffs' purchases of BP's Ordinary Shares on the LSE. *See A.S. Goldmen & Co., Inc. v. New Jersey Bureau of Securities*, 163 F.3d 780, 787 (3rd Cir. 1999) ("The contrasting modern approach [of the territorial scope of contracts] is to recognize that contracts formed between citizens in different states implicate the regulatory interests of both states.").

One federal court has noted that the territoriality of a given transaction in securities depends upon the locations of "offer, sale, and purchase." *Nat'l Century II*, 755 F. Supp. 2d at 884; *see also Goldmen*, 163 F.3d at 787 ("[W]hen an offer is made in one state and accepted in another, we now recognize that elements of the transaction have occurred in each state, and that both states have an interest in regulating the terms and performance of the contract."); *Barnebey*, 715 F. Supp. at 1536-41 (preparation of "Private Offering Memorandum" in Oklahoma—which was then routed through a New York agent to prospective purchasers outside of Oklahoma—was sufficient "nexus" with the state of Oklahoma to trigger application of Oklahoma's blue sky law). Plaintiffs' complaint does not include any such transactional details, beyond the allegations that: (1) Plaintiffs are pension funds located in Ohio; (2) BP's Ordinary Shares trade on the LSE; and (3) Plaintiffs purchased BP's Ordinary Shares. (Compl. ¶¶ 6, 24-27.)

Unfortunately, neither party has provided the Court with authority squarely on point with the alleged facts in this case. Specifically, the Court has not been given—and has not located through its own efforts—a case addressing whether a state's blue sky law applies to <u>any</u> exchange-traded securities transaction simply because it has been entered into by one of its residents.[13] Plaintiffs have provided, however, two cases from the Southern District of Ohio

---

[13] The cases cited by Plaintiffs for their proposition involve additional facts *beyond residence alone* which implicate the state whose blue sky law is to apply. For example, in *Johnson v.*

which state that pleading the residence of the purchaser is sufficient to allege a territorial nexus in the context of a motion to dismiss. *See Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Services, LLC*, 813 F. Supp. 2d 871, 877 (S.D. Ohio 2011) (rejecting argument that Ohio pension funds purchases of mortgage-backed securities had "no nexus with Ohio" despite failure to plead "the location(s) where the 300-plus securities transactions took place or identify who the sellers were" because "it is sufficient at the pleading stage that the complaint alleges the purchasers were in Ohio"); *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.* ("*Nat'l Century I*"), 541 F. Supp. 2d 986, 1008 (S.D. Ohio 2007) (stating "[t]ypically, a defrauded buyer of a security may assert a blue sky claim under the law of his own state" and declining to dismiss such claims at the pleading stage). The Court will adopt this position, but wants to make clear that its holding is limited to the current procedural posture of the case. It may be that the factual circumstances surrounding Plaintiffs' purchases of BP's Ordinary Shares negate the existence of a territorial nexus with Ohio. *See Martin v. Steubner*, 485 F. Supp. 88, 97-101 (S.D. Ohio 1979) (examining the specific contacts between a securities transaction and the state of Ohio, as developed through bench trial of the plaintiff's claims, to determine if the transaction fell within the outer bounds of Ohio's Securities Act). Consequently, Defendants may raise the argument again in a context more conducive to factual analysis, such as summary judgment.[14]

---

*Church of the Open Door*, the defrauded Ohio residents were solicited to participate in the fraudulent scheme while in Ohio by a Canadian citizen who was also living in Ohio. *See* 179 Ohio App.3d 532, 1004-06 (Ohio Ct. App. 2008).

[14] The Court finds that its lack of access to territoriality-related facts at the motion to dismiss stage also renders Defendants' dormant commerce clause argument premature. *See Nat'l Century II*, 755 F. Supp. 2d at 879-88 (analyzing, on summary judgment, details regarding out-of-state plaintiffs' purchases of securities from out-of-state intermediary and concluding that, because "[t]he sales . . . occurred wholly outside of Ohio," the application of Ohio's Securities Act "would violate the extraterritoriality principle of the Commerce Clause").

Because Plaintiffs have adequately <u>alleged</u> a territorial nexus with Ohio, the Court must determine whether they are correct that multiple states' blue sky laws can apply to a transaction without constituting a conflict of laws. The Court agrees with the "developing majority view" that such statutes do not present a conflict-of-laws problem, so long as a territorial nexus with a given state's law has been alleged. *See United Heritage*, 2009 WL 3229374, at *4; *see also Nat'l Century II*, 755 F. Supp. 2d at 881 ("[Plaintiffs] cite *Goldmen* and other cases like it in correctly arguing that the blue sky law of more than one state may apply to multi-state securities transactions."). The Court declines to impose Ohio's "most significant relationship" test to Plaintiffs' claims under the Ohio's Securities Act.

## V.   CONCLUSION

For the foregoing reasons, and pursuant to the reasoning articulated in the *Alameda County* Opinion, the Court GRANTS the Motion to Dismiss as to the following claims:

- All claims against BP America Inc.; BP Exploration and Production Inc.; Anthony Hayward; Douglas Suttles; and Andrew Inglis.

- As to the Ohio Police and Fire Pension Fund, all claims based on public statements made after March 31, 2010.[15]

- All claims based on statements made in the 2006 Sustainability Report, dated May 9, 2007. (*Id.* ¶ 294.)

- All claims based on statements made in the July 24, 2007 investor call.[16] (*Id.* ¶ 298.)

- All claims based on statements made in the September 25, 2007 industry

---

[15]   The Complaint here—like the complaint in *Alameda County*—does not plead with particularity any act of reliance other than the purchase of BP's Ordinary Shares. Therefore, to erase any doubt, the Court notes that any "holder" claims Plaintiffs intend to pursue are not, at present, properly pled under Rule 9(b).

[16] This statement has been found too general to support Plaintiffs' theory of falsity. *See BP III*, 922 F. Supp. 2d at 624.

conference.[17] (*Id.* ¶ 305.)

- All claims based on statements made in the November 8, 2007 industry conference. (*Id.* ¶ 310.)

- All claims based on unattributed statements made in the 2008 Annual Review, dated February 24, 2009. (*Id.* ¶ 341.)

- All claims based on statements made in the March 10, 2009 Initial Exploration Plan. (*Id.* ¶¶ 355-58.)

- All claims based on statements made in the June 30, 2009 Oil Spill Response Plan. (*Id.* ¶ 387.)

- All claims based on unattributed statements in the 2009 Sustainability Review, dated April 15, 2010. (*Id.* ¶ 416.)

- All claims based on statements made in the 2009 Sustainability Report, dated April 15, 2010. (*Id.* ¶¶ 420, 424.)

In all other respects, the Motion is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 30th day of September, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[17] This statement has been found too general to support Plaintiffs' theory of falsity. *See BP III*, 922 F. Supp. 2d at 624.